Robert W. Raddatz v. Commissioner.
Raddatz v. Commissioner
Docket No. 448-65.
United States Tax Court
T.C. Memo 1966-119; 1966 Tax Ct. Memo LEXIS 164; 25 T.C.M. (CCH) 629; T.C.M. (RIA) 66119; June 3, 1966
Robert W. Raddatz, pro se, Bethridge Park Road, Bethany, Conn. Charles M. Costenbader and Marvin M. Fein, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1962 in the amount of $884.53. The issue for decision is whether petitioner is entitled to a deduction of $3,500 as a casualty loss resulting from freeze damage to his *165 personal residence. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner, a resident of Bethany, Connecticut, filed a joint Federal income tax return with his wife for the calendar year 1962 with the district director of internal revenue, Hartford, Connecticut. In March 1962, petitioner and his family moved from Detroit, Michigan into a rented house in Orange, Connecticut, where they lived until August 1962. In August 1962, they purchased and moved into a house in Bethany, Connecticut. While living in Orange, Connecticut, petitioner had become acquainted with the town building inspector of Orange, and prior to purchasing the house in Bethany he asked the building inspector of the town of Orange to look over the house he was planning to buy and [*] him his opinion as to its structural quanty. The house which petitioner purchased had been started by a builder who had run into financial difficulty and sometime in late 1961 had left the house essentially completed but with certain finishing work to be done. The house was then taken over by the person from whom petitioner purchased it and finished by that individual. On December 31, 1962, a *166 tree fell over a utility line in Bethany, which caused a temporary interruption of electrical service. The temperature that day reached a low of approximately 10 degrees below zero and the wind reached a velocity of approximately 40 miles an hour. The interruption of electrical service in petitioner's house caused the furnace to cease operating. Petitioner's house is heated with pipes containing hot water which are located in the floors of the various rooms. While petitioner's furnace was not operating, the water in the pipes froze causing the pipes to split. The house became so cold that petitioner and his family moved temporarily to a motel. While petitioner and his family were living in the motel, an auxiliary furnace was moved into petitioner's house to thaw the pipes. Water from the split pipes caused damage to petitioner's house. Petitioner had repairs made to the house and to the pipes. On January 17, 1963, petitioner addressed a letter to the insurance agency with which he carried insurance on his house making a claim for $2,751, which he stated was for "damages to dwelling as a result of frozen water pipes, wind and water damage incurred during the week of December 30, 1962." *167 The itemized list of repairs covered by the claim included repairs to upstairs bedroom, repair to wall in dining room, repair to downstairs lavatory, and repairs to family room floor. Petitioner stated that damage to the family room floor resulted from the cold and from water lying on and under the floor, requiring re-laying of floor. The itemized list also included repair to garage involving the tearing down, replacement, and repainting of a portion of the garage ceiling, roof repairs, and repair to hallway walls involving the fixing of popping nails in plaster board. The claim also involved such items as lodging, food, and other expenses incurred while petitioner and his family were living in the motel and the services of persons to do clean-up work in the house. In concluding the letter to the insurance agency petitioner stated that no claim was being made for certain items and that "several other items are not included here such as the splitting of the veneer on the bookcases and other noticeable but acceptable changes in the physical structure of the building (for example, nails popping in dining room ceiling, warped doors, small cracks in plaster, wood pulling away from floor *168 or molding * * *." Petitioner's agent in recommending to the loss department of the insurance company that the claim be paid in the amount of $2,350, stated that the claim had been discussed with petitioner and this amount had been agreed to between them as an equitable payment for the damages sustained and the expenses occasioned by petitioner and his family being required to move to a motel. On January 6, 1963, a candle in petitioner's house fell over causing fire damage, for which petitioner made a claim to his insurance company of $1,707, which was paid to him by the insurance company in that amount. On October 4, 1962, payment of $72.15 had been made to petitioner pursuant to a claim he filed with his insurance company in that amount for water damage to his house on August 16, 1962, resulting from discharge of water from a pipe pertaining to second floor plumbing which seeped through a light fixture damaging the dining room table top. A claim for damage to petitioner's Bethany residence was filed with his insurance company claiming loss to have occurred on November 23, 1962. In recommending denial of the claimed loss to the loss department of the insurance company, the *169 agent stated: Our inspection revealed the dwelling was situated on a side hill and that the water involved was ground and surface water which had seeped into the basement. Since loss due to the seepage surface and ground water is not covered under the policy, we have respectfully denied liability to your assured. In the month of December 1962 petitioner began to notice some cracks in the floors and walls of his house. Petitioner paid $33,000 for the house when he purchased it. The original price was to have been $36,000 but the final agreement waived $3,000 of the price making the price which petitioner paid $33,000. Petitioner later claimed from the seller of the house a rebate because of problems he had with a septic tank and field and certain repainting needed in certain sections of the house. As a result of the claim made by petitioner to the seller and the discussions with the seller, petitioner was refunded, under date of May 17, 1963, by the seller $1,500 on the purchase price of the house. During the month of May 1963, petitioner began to investigate making repairs to cracks in the floor of his basement and garage, as well as repairing certain cracks in a retaining *170 wall on his property. As of May 31, 1963, petitioner received an estimate from Andrew N. Civitello for an amount of $2,264 for repair work which was to consist of removing existing concrete floor throughout the basement and garage area and fill work below and installing drainage tile and stone base with plastic film on top of stone, and installing concrete slab. On July 26, 1963, this same contractor submitted a bill for the amount of the May 3, 1963, estimate and $365 of extra work for installing steel adjustable column, repairing concrete cracks in garage wall, stuccoing side of garage wall, and refitting two garage windows. In addition to having this work done, petitioner also had an asphalt driveway redone and a retaining wall installed at costs of approximately $850 and $975, respectively. When the contractor dug up the floor to the basement of petitioner's house to replace it with a new floor in accordance with his estimate, he found that there was no drainage tile or rock under the existing floor of the garage or the basement. The concrete slab was laid directly on the ground. The type of clay soil in the area of Bethany in which petitioner's house was located does not allow *171 for drainage. Unless drain tile and stone are placed underneath a basement floor in this area, water will generally find its way into a basement. The contractor installed the new basement floor over the stone and drainage tile in accordance with his estimate and also put in the plastic film called for in that estimate. The contractor, at the time he went in to make the repairs, saw stains on the wall of petitioner's basement area which appeared to be water stains. In the contractor's opinion, in the area of Bethany in which petitioner's house is located, if a concrete slab is laid directly on the clay, the water in the clay will freeze and when it thaws cause damage to the floor. The United States Department of Commerce, Weather Bureau, Local Climatological Data for New Haven, Connecticut shows that in the month of December 1962 the deviation from normal of the temperature ranged for the first 9 days from +1 to +10, and for the last 21 days from +4, which occurred on December 26 to -27 which occurred on December 31, the next lowest range being -17 on December 21. For the month of January 1963 the range was from -16 on January 1 to +10 on January 20, and in February the range was *172 from -19 on February 8 to +8 on February 11. Petitioner's experience from living in Bethany is that during the winter months temperatures below freezing and down to zero degrees are not uncommon. Petitioner on his income tax return for the calendar year 1962 claimed a deduction in the amount of $3,500 with the explanation, "Damage to House Due to Freeze-up." Respondent in his notice of deficiency disallowed the claimed deduction with the explanation that petitioner had not established that he was entitled to the deduction. Opinion Section 165(a) provides for the deduction of any loss sustained during a taxable year, not compensated for by insurance or otherwise, and section 165(c) limits losses deductible by individuals. Under section 165(c)(3) a deduction is allowed for losses of property not connected with a trade or business, if such loss arises from fire, storm, shipwreck, or other casualty or from theft. In order to be entitled to the claimed deduction, petitioner must first show that there was a casualty within the meaning of the term as used in section 165(c), which caused damage to his property, and the amount of the loss resulting therefrom. Petitioner has failed *173 in his burden of proof in both respects. Petitioner makes it clear that he is not claiming any loss resulting from the falling of a tree on the electrical wire causing interruption to the electrical service in his house with the resultant damage from freezing of the water pipes in his heating system. Petitioner stated that he was completely compensated by insurance for this damage. Petitioner insists that the damage for which he claims the $3,500 deduction had occurred prior to December 31, 1962. The evidence in the record shows that there was cold weather in Bethany, Connecticut during the month of December 1962 but does not show either that such cold weather was unusual or that any cracks in petitioner's basement floor or other damage to his house resulted from this cold weather as distinguished from poor construction or some other cause. Since petitioner has failed to show that a casualty within the meaning of section 165(c)(3) caused the damage to his basement floor, he has not shown that any loss which might have occurred because of this and which had not been compensated for by insurance or otherwise, is deductible. , and *174 (C.A. 8, 1959). Petitioner's own testimony was that below freezing and zero temperatures were a regular occurrence during the winter months in Bethany, Connecticut. Even if petitioner had shown that the damage to his floor in some way resulted from a casualty, he has failed to show the amount of loss resulting from the cracks coming in the basement floor and the asphalt drive. The measure of the loss, if any, is the difference in the fair market value of petitioner's house before and after the casualty. . The record shows that the new floor laid in petitioner's basement was superior to the original floor in that it had stone and drainage tile below the concrete and a plastic sealing between the concrete and stone. The record does not show either the type of retaining wall, if any, originally on petitioner's property or the type of retaining wall installed by petitioner, nor with any detail the reason why the asphalt drive was replaced. The indication from the record is that these items were improvements to the property. The cost of these improvements would not be a measure of the difference in the fair market value before and after the *175 cracking of the basement floor even if the cracking had been shown to be due to some type of casualty. Petitioner was compensated for some water problems by a $1,500 rebate on his house and although his testimony was that this was due to problems in the septic tank area and other minor problems, it has not been shown that no portion of this refund was not due to problems with the basement water. To the extent any portion of the rebate on the purchase price of the house was due to problems with water in the basement, petitioner has been compensated for any loss from the cracking in the basement floor. Because of petitioner's failure of proof, we sustain respondent's disallowance of his claimed deduction of $3,500. Decision will be entered for respondent.